# Hamberlin *et al.* Appellants, *v.* Terry, Executor, *et al.*

A court of chancery has no jurisdiction to award an issue of *devisavit vel non*, and set aside a will which has been admitted to probate on the ground of the insanity of\ the testator, and the procurement of the probate of the will by the fraud of the executor, inasmuch as the probate court has ample and exclusive jurisdiction of such matters.

On a direct application for that specific purpose, courts of equity can not interfere to set aside a will, either for fraud or incompetency in the testator.

The statute by which, prior to the adoption of the present constitution, the court of chancery was authorized to set aside a will, and award issues of *devisavit vel non*, was repealed by the present constitution delegating this jurisdiction to the probate court.

It seems that the probate court has power to award a new trial, on proceedings for that purpose, of the probate of a will.

APPEAL from the court of chancery.

The appellants filed their bill in the Superior Court of Chancery against the executor of the last will and testament of John Pickens, deceased, and the legatees mentioned in the will, in which they allege that the testator was incompetent to make a will, and that the same was procured by fraud. They prayed that an issue of *devisavit vel non* might be directed, and that the will and the probate thereof be set aside, and for an injunction against the executor, who was about to sell the personalty. They charged that the will was made at Fayette, distant from the residence of the testator, and witnessed by persons unacquainted with his insanity, who were only in his presence long enough to sign the will, and were momentarily called in that they might not discover his insanity. The bill also charged fraud on the part of the executor; that he well knew the insanity of the testator, and concealed the same, and that he repaired to the probate court and

secretly procured the probate of the will, without notice to the complainants.

By his will, the testator directed that three of his slaves should be emancipated, and that his executor should appropriate five hundred dollars for that purpose. He further directed, that each of these slaves should be paid five hundred dollars, and sixty acres of land, to be laid out from the west end of the tract on which he then resided.

The complainants filed an amended bill, in which they charged fraud and surprize in the probate of the will, and alleged newly discovered evidence by which they could prove the same. They further prayed that the probate of the will might be annulled, and that the will be opened again for probate *de novo* by the probate court, and a new trial and hearing on the testimony; that the validity of the will be tried *de novo*, and on final hearing that the executor be ordered to deliver up the estate, &c.; and for discovery and account.

There was a demurrer to the bill, which was sustained by the chancellor, and an appeal taken to this court.

THRASHER for appellants.

No principle is believed to be more familiar in equity, than that a court of chancery will interfere to set aside a judgment at law, and grant a new trial for fraud, surprize, accident, and for newly discovered evidence. Graham on New Trials, 557, 558. An application to a court of chancery for a new trial at law, must show that injustice has been done. 5 Litt. Rep. 10; 2 Bibb. Rep. 550; Johnson's Chancery Digest.

This jurisdiction, too, is exercised over the judgments of courts of law that have the original, exclusive jurisdiction to the same extent that the court of probate has the jurisdiction over testamentary matters, by the laws of this state. It is also a familiar principle of equity jurisdiction, that courts of chancery will open a final administration account settled by the probate court, and surcharge it for errors, mistake or fraud. 3 Bibb. Rep. 352. This power is exercised by the court of chancery on the ground that the probate court cannot re-open it, or give the remedy after a final adjudication; and it is upon the same principle that the court of

Hamberlin *et al.*, Appellants, *v.* Terry, Executor, *et al.*

chancery orders new trials at law, that the courts of law cannot afford the remedy after the end of the term. By a parity of reason, then, a court of chancery can also open the probate of a will, on proof of fraud, surprize or newly discovered evidence, and direct the probate court to proceed *de novo*, for the same reason that the court of probate cannot re-open and re-examine her own decrees. The jurisdiction is not assumed for the purpose of reviewing the decrees of the probate court, but for the purpose of enabling the probate court to afford to the parties a fair opportunity to re-try their cause in the same court. Such is believed to be the practice in most of the American states where the same original, exclusive jurisdiction over testamentary matters is given to the probate court.

The case of McDowall *v.* Peyton, in 2 Equity Rep. 313, is in point. In that case the will had been proved before the ordinary without opposition. The next of kin interested to oppose it being abroad, and knowing nothing of it until after the probate. The court of chancery gave the parties an opportunity of examining and litigating the will, by directing those benefitted by the will to consent to a revocation of the probate, and to a re-examination of the will before the ordinary. 2 Equity Rep. 319, 320.

The case of C. Palmer *v.* E. Mikell *et al.*, reported in 2 Equity Rep. 342, is also in point. A will having been executed under circumstances which made it doubtful whether the testator was in such a state of mind and body as to be capable of duly making a will, and the same having been proved before the ordinary without opposition from the next of kin, because they were unapprized of the grounds of doubt; the court decreed that the executors and those benefitted by the will, should consent to open the probate, and let in the parties to a fair and full litigation in the court of ordinary. The present bill makes out a stronger case than either of the above recited cases, and the demurrer admits the allegations to be true, as charged in the bill.

Second: It is believed to be a principle conceded in law, that where there are void devises in a will, the executor holds the property thus devised in trust, and as trustee for the next of kin, and that the jurisdiction of the court of chancery in cases involving the doctrine of trusts and void demises is exclusive. "In what-

13*

ever way," says judge Story, "or for whatever purpose trusts arise under wills, they are exclusively within the jurisdiction of courts of equity." 2 Story's Equity, 319. The principal jurisdiction claimed by courts of equity over administrators is upon the doctrine of constructive trusts, but the fact of its being a constructive trust is not the sole ground. Other auxiliary grounds exist; such as taking accounts, discovery, and where the remedy in other courts is not plain, adequate and complete. 1 Story's Equity, 508, 507. The doctrine of implied or resulting trusts belongs exclusively to courts of equity. 2 Not. & McChord, 580. The High Court of Errors and Appeals of this state have repeatedly taken jurisdiction, on appeals from the court of chancery, over void devises, and sustained the jurisdiction of the court, since the adoption of the new constitution. See the case of Thomas Hinds *v.* Brazeale *et al.*, 2 Howard, 836, and 3 Howard 337. "If a testator," says judge Story, "does not dispose of the residuum of his estate, and yet from the circumstances of the will, the executor is not entitled to the residuum, he will be held liable to distribute it as a trustee for the next of kin. But the spiritual courts have no jurisdiction whatever in such cases, to enforce a distribution. Trusts are not cognizable in those courts, and cannot be enforced by them. 1 Story's Equity, 511, and 1 P. Wms. 545, 548, in point on the subject of void devises.

The point is too well settled to admit of argument, that devises to slaves are absolutely void, and that a devise of freedom to a slave, or that the executor shall emancipate a slave is void. Slaves cannot take by devise, descent or purchase; nor can they be emancipated without the consent of the legislature, on proof of meritorious services only. 2 Howard, 836, and 3 Howard, 337; 3 American Digest, 497, 480, 481, 538; 1 Taylor, 209, and 4 Dessaus. 26).

Third and lastly: That the devises to the slaves and to emancipate them being void, the heirs take, notwithstanding, says Kent, that the testator may have clearly declared his intention to disinherit them. 4 Kent, first edition, 510. The estate in such case must descend to the heirs, if it be not legally vested elsewhere. Cowper, 657; 7 Cowan, 187; 2 Wendell, 1; 6 Connecticut, 292; 3 Amer. Dig. 538. The Revised Code, however, pages 41–42,

sections 50 and 52, are thought to be conclusive on this point. Both sections are the same, one having relation to real estate, and the other to the personal estate of deceased persons. ⟨These sections give the rule in a language not easily misunderstood, and cut off at once all the metaphysical reasoning of the English courts. On the subject of void devises and lapsed legacies, where any person shall die·possessed of goods and chattels or personal estate not bequeathed, the same shall descend to and ·be distributed among his or her heirs, in the same way and manner that real estate not devised descends by this act. Revised Code, 42, sec. 52. A void devise is construed as though it had never been devised, and therefore the chancellor erred in dismissing the bill of the complainants, without decreeing the void devises charged in the bill to the heirs at law.

CLARK for appellees.

The question of jurisdiction which arises upon the demurrer in this case, is fully settled by this court in the case of Carmichael *et al. v.* Browder, 3 Howard, 252, and Vertner *et al. v.* McMurran, 2 Howard.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The appellants filed their bill in the superior court of chancery, against the executor of the last will and testament of John Pickens, deceased, and the legatees mentioned in the will, in which they allege that the testator was incapable of making a will, and that the same was procured by fraud. The prayer is, that an issue of *devisavit vel non* be directed, and that the will be set aside; and for an injunction against the executor who was about to sell the personalty. There was a demurrer to the bill, which the chancellor sustained, and dismissed the bill.

It was considered no doubt that the matter set out in the bill was properly cognizable before the probate court of the proper county, and that the chancery court had not jurisdiction. The powers and jurisdiction of the probate courts have undergone repeated adjudication in this court, and have been uniformly held to be full and complete, and even exclusive over all matters testamen-

tary and of administration. The several decisions were reviewed in the case of Carmichael *v.* Browder, 3 Howard, 252. The conclusion in that case was, that a court of chancery could not take jurisdiction in any matter testamentary or of administration, unless upon the same principle that it always assumes jurisdiction over matters not peculiarly within its cognizance, to wit, the incompetency of the probate court to give ample relief. Then the question here is, has the probate court power to give relief? if so, the remedy is before that court. We think it undoubtedly has; and not only so, but that this is a matter peculiarly within its jurisdiction. It is a matter testamentary, and the cognizance of it was confided to that court by the constitution. Whilst the administration is pending, the executor is always subject to the jurisdiction of the probate court. He may be superseded at any time for good cause shown, and that court may inquire into the validity of a will, at the suggestion of any party interested. The first probate is a mere incipient step necessary to enable the court to adopt the means to carry it into execution; but it is not conclusive on heirs and distributees, and may be opened and if necessary set aside. If it be necessary to direct an issue of *devisavit vel non*, that court has the power and can exercise it, by sending the case to the circuit court. There is no allegation in the bill to exempt this case from the general rule heretofore laid down. This is not a matter of equity jurisdiction. Incidentally courts of equity may sometimes inquire into the validity of wills, but such inquiries are only incidental to enable them to give relief in matters where the jurisdiction is undoubted. But on a direct application for that specific purpose, courts of equity cannot interfere to set aside a will either for fraud or incompetency in the testator. Powell on Devises, 689, 690, 691; 2 Fonb. 318. Such questions belonged to the ecclesiastical courts in England, and they belong to the probate courts here.

Prior to the adoption of our present constitution, there was a statutory provision which authorized any party interested within a given time to file his bill in chancery to set aside a will, whereupon an issue was directed to be made up to try the validity of the will. But this was not a matter of equity jurisdiction; on the

contrary, it is testamentary in its character, and when the constitution gave to the probate courts full jurisdiction in all matters testamentary and of administration, this power was of course included in that general grant; and as the jurisdiction of the probate court is also exclusive, it follows as a matter of course that the law alluded to was virtually repealed by the constitution.

The decree of the chancellor must be affirmed, with costs.